**PENNZOIL COMPANY et al.,**
**Petitioners,**

v.

**FEDERAL POWER COMMISSION,**
**Respondent, and Consolidated Cases.***

No. 75–2961.

United States Court of Appeals,
Fifth Circuit.

July 2, 1976.

* In which the Federal Power Commission is Respondent and the following are Petitioners: Tenneco Oil Company, 75–3003; The California Company, a Division of Chevron Oil Company, 75–3006; The Superior Oil Company, 75–3024; Marathon Oil Company, 75–3037; Mobil Oil Corporation, 75–3043; Continental Oil Company, 75–3048; Burmah Oil and Gas Company and Burmah Oil Development, Inc., 75–3148; Superior Oil Company, 75–3177; Exxon Corporation, 75–3400.

Alvin M. Owsley, Jr., J. Gregory Copeland, Houston, Tex., for Pennzoil.

H. N. Burton, Dallas, Tex., for Atlantic Richfield Co.

Kirk W. Weinert, Houston, Tex., for Texaco, Inc.

Neal Powers, Jr., Houston, Tex., for Ecee, Inc., et al.

George C. Bond, Kenneth L. Riedman, Jr., Los Angeles, Cal., for Union Oil Co. of Cal.

Charles F. Wheatley, Jr., Wheatley & Miller, Washington, D. C., for American Public Gas Ass'n.

Malcolm H. Furbush, San Francisco, Cal., for Pacific Gas & Elec. Co.

Jeron Stevens, Baker & Botts, George F. Goolsby, Houston, Tex., Bruce F. Kiely, Washington, D. C., Vernon M. Turner, Michael B. Silva, A. Duncan Gray, Jr., Houston, Tex., for Tenneco.

John C. Christian, New Orleans, La., Justin R. Wolf, Washington, D. C., James B. Atkin, San Francisco, Cal., G. Howard Dearing, New Orleans, La., for the Cal. Co., a Div. of Chevron Oil Co.

William A. Sackmann, Findlay, Ohio, Carroll L. Gilliam, Philip R. Ehrenkranz, Craig W. Hulvey, Washington, D. C., for Marathon Oil Corp.

Philip R. Ehrenkranz, Carroll L. Gilliam, Washington, D. C., Grove, Jaskiewicz, Gilliam & Cobert, Tom P. Hamill, Robert D. Haworth, Robert E. Shaw, Houston, Tex., for Mobil Oil Corp.

Tom Burton, Houston, Tex., for Continental Oil Co.

Bernard A. Foster, Nancy J. Hubbard, Washington, D. C., David M. Whitney, Houston, Tex., for Burmah Oil & Gas Co. and Burmah Oil Development, Inc.

W. B. Wagner, Jr., Pat F. Timmons, Houston, Tex., Scott P. Anger, Washington, D. C., for Superior Oil Co.

Martin N. Erck, Paul W. Wright, Houston, Tex., for Exxon Corp.

Allan Abbot Tuttle, Sol., FPC, Drexel D. Journey, Gen. Counsel, Washington, D. C., for the F.P.C.

Before THORNBERRY, COLEMAN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

In this case, we review an order of the Federal Power Commission stating that certain information required of various offshore natural gas producers will be made public. The producing companies object to the Commission's order contending that the information consists of trade secrets and confidential geophysical information, publication of which will significantly damage their financial interests. Since we find the Commission did not give adequate consideration to relevant factors in reaching its decision, we remand this case to the Commission.

Recently, the Federal Power Commission has attempted to create a rate structure that would insure a more nearly complete development of the nation's natural gas supply. Quite naturally, in determining this structure, the Commission has been deeply concerned with the actual amount of gas reserves that have already been discovered. Normally, the Commission has relied on reserve figures compiled by the American Gas Association Committee on Natural Gas Reserves (AGA). Recently a staff study, however, has indicated a disparity of approximately 1.7 trillion cubic feet between the AGA figures for the south Louisiana area and reserve figures supplied to the Commission by various pipeline companies. On March 21, 1974, the Commission first requested comments from various interested parties on the staff study. A conference was held on April 16, 1974, concerning this disparity but was unsuccessful in resolving the problem. On June 13, 1975, the Commission issued an "order instituting investigation to update prior staff study" that required certain companies who had wells in the south Louisiana area to produce

detailed reserve information.[1] The Commission stated:

> All background data must also be submitted, including workpapers, such as electric well logs, core analysis data, well information, structure and isopachous maps, any calculated data such as reservoir pressure or temperature derived therefrom, plus any pressure decline, production decline, or material balance method data useful in making a reserve estimate. In addition, any further information relative to making a reserve estimate for the fields listed on Table I must also be submitted.

Finally, in its order the Commission concluded "all responses to this order will be a matter of public record."

The producers from whom information was requested immediately objected to the FPC's order. Before the Commission, they argued that the information sought consisted of confidential trade secrets. Basically, the producers contended that the possession of raw data concerning wells already drilled allows a company to estimate the potential productivity of nearby tracts. These tracts often have not yet been leased by the federal government. When the government decides to offer additional lands for lease, the information obtained from drilling previous wells will greatly facilitate the ability of a producer to predict the new area's possible productivity. In fact, the producers argue that one of the major reasons for their drilling in the area is to obtain information that would be useful in bidding on future leases. If they were required to make this information public, as the Commission's order stated, other companies who had not gone to the substantial expense of exploratory drilling would be equally able to estimate the worth of future leases.

On rehearing, the Commission responded briefly to the producer's objections. The relevant portion of the Commission's order states:

Particularly in the light of the nature of the investigation involved here, we think the value to the public of this information far outweighs the claimed pecuniary interest of the producer's in confidentiality. We recognize the disclosure of the reserve data requested by us may adversely affect the private interest of the producers, but such possible damage does not override in our view the public interest in disclosure. The regulatory process is a bond of consumer protection and the regulations and rates cannot proceed satisfactorily without full disclosure of the facts upon which the rates are to be determined.

Producers appealed to this court from the denial of their petition and requested a stay of the Commission's order. This court ruled that petitioners would have to supply the information to the Commission but pending any further order of this court the data would have to be "held in the strictest confidence of the Federal Power Commission." The producers supplied the requested information and all parties agree that the only issue remaining is whether such information should be made public.

## I. FREEDOM OF INFORMATION ACT.

■ The producer's first argument is that the Freedom of Information Act (FOIA), 5 U.S.C. § 552, is an absolute bar to the release of this information. That statute states in relevant part:

> (a) Each agency shall make available to the public information as follows: . . .
> (b) This section does not apply to matters that are—. . . (4) trade secrets and commercial or financial information obtained from persons and privileged or confidential; . . . (9) geological or geophysical information and data including maps, concerning wells.

In this contention, the producers argue that exclusions (4) and (9) of FOIA clearly encompass the information that the Commis-

---

1. Order Instituting Investigation to Update Prior Staff Study, Docket No. RM 75–14, June 13, 1975, on rehearing July 24, 1975.

sion seeks to make public.[2] The producers then argue that since the statute requires all information not in the exclusions to be made public the logical Congressional intent is that information within the exclusions is required to be kept confidential. According to the producers, once the information is determined to be encompassed by an exclusion· of FOIA the inquiry is at an end; under no circumstances can that information be released.

■ We believe that this argument distorts the clear intent of the Freedom of Information Act. The Supreme Court has repeatedly stated that the basic thrust of the Freedom of Information Act is "to permit access to official information long shielded unnecessarily from public view." *Environmental Protection Agency v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). *See also, NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Kent Corp. v. NLRB,* 530 F.2d 612 (5th Cir. 1976); *Stokes v. Brennan,* 476 F.2d 699 (5th Cir. 1973). The Court, moreover, has recently reaffirmed that the thrust of the Act is toward disclosure. *Department of the Air Force v. Rose,* —— U.S. ——, 96 S.Ct. 1592, 48 L.Ed.2d 11, 44 L.W. 4503 (1976). Interpreting the statute as an absolute bar to the release of certain information would be at war with the basic principles embodied in the Freedom of Information Act.

Several additional factors lead to the conclusion that the Act was not intended as a bar to disclosure. The statute simply states that "this section does not apply" to matters included in the exclusion. Secondly, the provision that confers jurisdiction in the federal courts speaks only in terms of a complainant that had been denied information. 5 U.S.C. § 552(a)(4)(B) (Supp.1976). Also, various statements by the Supreme Court strongly suggest that the statute is not an absolute bar to disclosure. Recently, in *Department of the Air Force v. Rose,* the Court said,

There are, however, exemptions from *compelled* disclosure. There are nine in number as set forth in § 552(b). But these limited exemptions do not obscure ·the basic policy that disclosure, not secrecy, is the dominant objective of the Act. —— U.S. at ——, 96 S.Ct. at 1599, 44 L.W. at 4505. (Emphasis added.)

The Court has also stated that the statute distinguishes between material that "*may* be withheld or *must* be disclosed." *Environmental Protection Agency v. Mink, supra* 410 U.S. at 79, 93 S.Ct. at 832. (Emphasis added.) Third, other courts that have dealt with this question have held that the statute is not a bar to releasing information. *Charles River Park "A", Inc. v. HUD,* 519 F.2d 935 (D.C.Cir.1975); *Moore-McCormack Lines v. ITO Corp.,* 508 F.2d 945 (4th Cir. 1974). Finally, to reject the producer's argument is consistent with the commentary on FOIA[3] and with Congressional reports concerning the statute issued subsequent to its passage.[4]

While we reject the producer's ·contention of an absolute prohibition against disclosure, FOIA is not irrelevant in determining whether information encompassed in its exclusions should be disclosed. In reviewing the agency's exercise of discretion concerning the release of such information, this court must be cognizant of the fact that Congress in drafting a broad disclosure statute found sufficient justification for withholding this type of information from public perusal. Recognition of this congressional policy is particularly desirous when the information is encompassed in such a narrow provision as exclusion (9) of FOIA. In the proper case, where releasing the information serves no legitimate function, this court will prohibit disclosure. *Conti-*

---

**2.** The Commission does not contest the fact that the information in issue in this litigation is encompassed by the two exclusions of FOIA.

**3.** *See, e. g.,* Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 766 (1967); Project, Government Information and

the Rights of Citizens, 73 Mich.L.Rev. 971, 1159 (1975).

**4.** Senate Rep. No. 93–854, 93d Cong., 2d Sess. at 6 (1974). H.R.Rep. No. 93–221, 93d Cong., 1st Sess. at 59–60 (1973).

nental *Oil Co. v. Federal Power Commission,* 519 F.2d 31 (5th Cir. 1975), cert. denied sub nom., *Superior Oil v. Federal Power Commission,* —— U.S. ——, 96 S.Ct. 2168, 48 L.Ed.2d 794, 44 L.W. 3659 (May 18, 1976).

## II. ABUSE OF DISCRETION.

The producer's second contention is that even if FOIA does not prohibit disclosure, the Federal Power Commission should be prohibited from releasing this information. This court must determine whether the release of the information by the FPC would be an abuse of discretion. In *Federal Communications Commission v. Schreiber,* 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965), the Supreme Court dealt with a situation similar to the present case. There, the FCC had established public hearings concerning an investigation of television programming. A party who had been subpoenaed resisted the subpoena on the grounds that he would be required to divulge trade secrets at the public hearings. The Supreme Court sustained the Commission's right to promulgate a rule that stated that only in extraordinary instances would confidentiality of information be respected. The Court held that "the Presiding Officer did not abuse his discretion in rejecting this request for blanket nondisclosure." 381 U.S. at 295, 85 S.Ct. at 1470. The opinion in *FCC v. Schreiber* cannot be read, however, to mean that it is always within the agency's discretion to allow disclosure. Implicit in *Schreiber* is the proposition that the balancing of the public and private interests might compel secrecy. 381 U.S. at 296, 85 S.Ct. 1459. Therefore, in reviewing this case we must likewise determine whether the Commission abused its discretion in balancing the public and private interests.

Our scrutiny of this exercise of the Federal Power Commission's discretion is particularly keen since this agency's decision is a departure from prior norms. *Secretary of Agriculture v. United States,* 347 U.S. 645, 652, 653, 74 S.Ct. 826, 98 L.Ed. 1015 (1954);

*FTC v. Crowther,* 430 F.2d 510 (D.C.Cir. 1970). In general, the Commission has respected requests for confidentiality in similar situations. First, in denying a request for publication of essentially the same type of information, the Commission stated in Amerada Hess Corp., 50 FPC 1048 (1973):

> The general disclosure of proprietary reserve data would have an inhibiting effect on future exploration of natural gas reserves so speculators could equally benefit with those producers when they make geological and geophysical expenditures. 50 FPC at 1050–51.

In addition, the Commission's normal rule is that trade secret information will not be made public. 18 C.F.R. § 1.36(c)(14)(iv) (1976). Finally, the Commission has recently issued Form 40 which requests this type of information but states that such information will generally be kept confidential.[5] Since the Commission's action clearly deviates from its own established trend, at a minimum the reviewing court should engage in a searching inquiry to determine whether the Commission abused its discretion.

 Considering this more exacting standard of review, the court, in determining whether the agency's action has been arbitrary, capricious, or an abuse of discretion, must consider whether the decision was based on a consideration of the relevant factors. *See, Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Sabin v. Butz,* 515 F.2d 1061 (10th Cir. 1975); *American Federation of State, City and Municipal Employees v. City of Cleveland,* 484 F.2d 339, 346 (6th Cir. 1973). In determining whether all the factors have been considered, the agency can only be upheld on the reasons stated. *Real v. Simon,* 514 F.2d 738 (5th Cir. 1975); *see also, Louisiana Power and Light v. Federal Power Commission,* 526 F.2d 898, 904 (5th Cir. 1976). In its brief order, the Commission stated that it was cognizant of the financial harm to the producers that compliance with its order

---

5. *See* FPC Order No. 527–A, Docket No. RM 74–16 (August 18, 1975). *Tenneco Co. v. FPC,* appeal docketed No. 75–3291, 9th Cir., Oct 1975.

would entail. The Commission, however, felt that the "public interest" outweighed such harm. We feel that this brief statement is inadequate as an articulation of a finding that disclosure of this information serves a legitimate regulatory function.

In deciding whether this information should be disclosed, we believe the Commission must consider three additional factors. First, the Commission should consider whether disclosure of this type of detailed information will significantly aid the Commission in fulfilling its functions. Before this court, the parties have engaged in considerable dispute on the question of the availability of outside consultants to evaluate this data when made public. While there is no doubt that other producers will find this information very valuable, the question remains whether any consumers of natural gas will be able to reasonably avail themselves of this data in participating before the Commission. Apparently, the Commission felt that experts would be available to aid consumers but there is no discussion at all of this consideration in the agency's opinion. Secondly, the Commission should consider not only the harm done to the producers by releasing this information but the harm to the public generally. Several producers argue before this court that one of the major incentives for gas exploration is the opportunity to obtain exclusive knowledge concerning potential gas reserves. They contend, and the Commission accepted this argument in *Amerada Hess Corp., supra,* that without this additional incentive exploration will be curtailed. The Commission's opinion is devoid of any consideration of this possible harm to future exploration. Finally, and most importantly, the Commission should consider whether there are alternatives to full disclosure that will provide consumers with adequate knowledge to fully participate in the Commission's proceedings but at the same time protect the interests of the producers. *Cf. Department of the Air Force v. Rose, supra.* Again, there is nothing in the Commission's opinion which discusses whether any alternatives to full disclosure are available. Assurances by the Commission's counsel that no such alternatives are available are an inadequate substitute for findings by the Commission. *Federal Power Commission v. Texaco,* 417 U.S. 380, 397, 94 S.Ct. 2315, 41 L.Ed.2d 141 (1974).

Our disposition of this case is consistent with our opinion in *Continental Oil v. FPC, supra.* There, we held the Commission had abused its discretion in ordering the release of information that would identify the parties to various intrastate natural gas sales. In that case the record was clear that no legitimate purpose could be served by identifying the parties. In contradistinction, here, the Commission may find it necessary to disclose not only aggregate information but information concerning individual wells which will clearly identify their location and the producer involved in order to resolve this dispute. The Commission, however, in making an informed decision and before taking action that has such clear and Congressionally recognized adverse consequences must consider all relevant factors.

In conclusion, the mere fact that this information is encompassed within the exclusions of the Freedom of Information Act does not prohibit its disclosure. What is required is a balancing of the public and private interests. We believe that the Commission abused its discretion in issuing this order without fully considering the factors relevant to the resolution of this dispute. It may well be that there is no other alternative than releasing this information and subjecting the producers to the financial loss that such disclosure would entail. We feel, however, that our obligation as reviewing court is to ensure that the Commission has engaged in thoughtful consideration and therefore remand for further proceedings consistent with this opinion.